UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

T.V.D.B. SARL; KAPLA FRANCE
SARL; and TOM'S TOYS, LLC,

Plaintiffs,

v.   4:12-cv-230

KAPLA USA, LP; KAPLA USA GP,
LLC; CITIBLOCS, LLC; and
MARJORIE I. CHAYETTE,

Defendants.

## ORDER

### I. INTRODUCTION

T.V.D.B. Sarl ("TVDB"), Kapla France SARL ("Kapla"), and Tom's Toys, LLC ("Tom") bring this action against KAPLA USA, LP ("KAPLA USA"), KAPLA USA GP, LLC ("GP"), CITIBLOCS, LLC ("CITIBLOCS"), and Marjorie I. Chayette alleging breach of contract and numerous business torts. Plaintiffs and Defendants cross moved for summary judgment. ECF Nos. 49; 50. The Court *GRANTS IN PART* and *DENIES IN PART* both motions. The Court also *ORDERS* the parties to submit briefs on the proper conversion rate from Euros to Dollars and the proper pre-judgment interest rate.

### II. BACKGROUND

This is the story of what happens when an international business relationship established to market children's building blocks comes crashing to the ground. Kapla, a French company, and TVDB, a Moroccan company, are in the business of manufacturing unique wooden toy blocks. ECF No. 1 at 1, 3. The Dutch blocks are made of French wood but are processed, packaged, and shipped from Morocco. *Id.* at 3. Each block is "precision cut to a single size and shape" with a ratio of 1 unit of thickness to 3 units of width to 15 units of length. *Id.* "[W]hen stacked, [the blocks] remain in place through forces of gravity, and owing to the distinct size and configuration of the blocks." *Id.*

In 2005, Kapla sought a new distribution partner in the United States. *Id.* at 4. Kapla management interviewed and selected Chayette, memorializing an exclusive distribution relationship with her in 2005. *Id.* Chayette then formed KAPLA USA as the corporate distributor of the wooden blocks and also formed GP to serve as the corporate general partner of KAPLA USA. *Id.* From 2005 to 2008, the distribution relationship proceeded as all parties intended, with blocks shipping from Morocco to Savannah and then on to 2,500 retailers throughout the United States. *Id.* at 4-5.

In September, 2008, KAPLA USA placed two orders for blocks in the amounts of €37,925 and €51,330. *Id.* at 5. KAPLA USA never paid the invoice amounts to Kapla.[1] ECF Nos. 1 at 6; 56 at 7-8. KAPLA USA is now insolvent and out of business. ECF Nos. 56 at 3. Kapla alleges the failure to pay amounts to a breach of contract, unjust enrichment, and conversion. ECF No. 1 at 9, 18, 23. This dispute would

---

[1] Due to an accounting adjustment, Kapla claims that KAPLA USA currently owes a total of €61,769. ECF Nos. 1 at 6; 1-2 at 2-3.

be straightforward if it ended here, but the story continues.

In October 2008, CITIBLOCS, a company selling blocks very similar to those that Chayette previously distributed for Kapla, was formed.[2] ECF No. 1 at 8. Plaintiffs allege that the CITIBLOCS venture breaches fiduciary duties, breaches a duty to properly represent business information, violates state trade secret laws, violates federal intellectual property laws, amounts to unfair competition and deceptive practices, and tortuously interferes with their businesses.[3] ECF No. 1 at 14-17, 18-21, 23. Plaintiffs also ask the Court to hold CITIBLOCS accountable for KAPLA USA's debts through successor liability. *Id.* at 11-12. Finally, Plaintiffs allege that Chayette is personally responsible and liable for all breaches and torts, and asks the Court to pierce the corporate veil. *Id.*

Plaintiffs contend that they are entitled to summary judgment on the breach of contract claim and the unjust enrichment claim against KAPLA USA, the claim under the Georgia Deceptive Trade Practices Act, and their claim that CITIBLOCS is the successor in interest to KAPLA USA and thus liable for its debts. ECF No. 49-1 at 11-21. Defendants contend they are entitled to summary judgment on all claims for lack of evidence except the breach of contract claim against KAPLA USA. ECF No. 51 at 10-31. Defendants also contend that the Court must dismiss Tom[4] because it is unable to demonstrate an injury, and thus the claims are not justiciable under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

This order 1) defines the appropriate standard of review; 2) addresses the dismissal of Tom's claims; 3) evaluates the contract related claims; 4) evaluates the claims related to CITIBLOCS's conduct; 5) analyzes CITIBLOCS as a successor in interest to KAPLA USA; and 6) analyzes corporate veil piercing claims.

### III. ANALYSIS

#### A. Standard of Review

Courts "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving parties. *Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Co., Fla.*, 630 F.3d 1346, 1353 (11th Cir. 2011). Courts, moreover, may consider all materials in the record, not just

---

[2] Chayette first became a member of CITIBLOCS in June, 2009. ECF No. 49-8 at 3.

[3] Plaintiffs also abandoned claims for breach of contract accompanied by a fraudulent act, conversion of customer lists, and defamation. ECF No. 55 at 1.

[4] Tom is not present in the narrative discussing the parties because it formed in May, 2009. ECF No. 51 at 31.

those cited by the parties. Fed. R. Civ. P. 56(c)(3).

### B. Dismissal of all claims by Tom for lack of standing

A plaintiff must demonstrate three things to establish standing in federal courts under Article III of the Constitution: 1) "he must show that he has suffered an 'injury-in-fact;'" 2) he must draw a "causal connection between the asserted injury-in-fact and the challenged action of the defendant;" and 3) the injury must be redressable by a favorable decision. *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001). "In addition, standing must exist with respect to each claim." *Parker v. Scrap Metal Processors*, 386 F.3d 993, 1002 (11th Cir. 2004).

Defendants argue that Tom has suffered no injury-in-fact because it was not formed until May, 2009, months after KAPLA USA ordered and received the unpaid blocks. ECF No. 51 at 31-32. The Court agrees that Tom could not suffer injury from a breach of contract that occurred prior to Tom's existence. Tom's claims related to the unpaid order therefore are dismissed.

Nevertheless, Tom correctly notes that any ongoing use of Kapla's advertising material by CITIBLOCS harms Tom's sales, and it therefore has standing to assert claims related to CITIBLOCS's conduct.[5] *See* ECF No. 55 at 24-26.

### C. Claims related to the unpaid order

#### 1. Breach of Contract

Plaintiffs and Defendants both agree that summary judgment is proper on the claim of breach of contract against KAPLA USA. ECF Nos. 49-1 at 11-12; 56 at 7-8. But the analysis does not end there. Plaintiffs have claimed an unpaid balance of €61,769. Once a federal court determines damages calculated in a foreign currency, it must determine the "proper rate at which to convert this amount into United States dollars." *Jam. Nutrition Holdings, Ltd. v. United Shipping Co.*, 643 F.2d 376, 379 (5th Cir. Unit A Apr. 1981). Neither party has addressed the conversion issues. So, the Court instructs the parties to submit briefs on the proper conversion date and rate within 21 days of this Order.

Furthermore, the parties must brief the Court on the proper pre-judgment interest rate in light of the proper date to select the exchange rate, as a victorious party may not reap a windfall by applying a favorable interest rate to currency converted at a favorable exchange rate. *See Seguros Del Estado, S.A. v. Scientific Games, Inc.*, 262 F.3d 1164, 1179-81 (11th Cir. 2001) (holding that the district court erred by applying the exchange rate from the date of a contract breach and then applying a high pre-judgment interest rate to the converted sum that should have only applied to deposits of Colombian pesos).

#### 2. Unjust Enrichment

In Georgia, a claim for unjust enrichment "does not lie where there is an express contract." *Arko v. Cirou*, 700 S.E.2d 604, 608 (Ga. Ct. App. 2010). Both

---

[5] Along similar lines, the Court rejects Defendants' contention that all claims except the breach of contract must be dismissed because Plaintiffs can show no damages. ECF No. 51 at 32-34. Even if the actual damages are immeasurable, the jury may award nominal damages if "the violation of a right is shown." *MTW Inv. Co. v. Alcovy Props., Inc.*, 616 S.E.2d 166, 169 (Ga. Ct. App. 2005).

3

parties have concede that a contract exists and therefore Plaintiff's unjust enrichment claim fails as a matter of law.

### 3. Conversion of Inventory

In Georgia, "[c]onversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." *Maryland Cas. Ins. Co. v. Welchel*, 356 S.E.2d 877, 880 (Ga. 1987) (internal quotations omitted). But not "every breach of a contractual obligation to pay money" constitutes conversion. *LaRoche Indus., Inc. v. AIG Risk Mgmt.*, 959 F.2d 189, 191 (11th Cir. 1992). Instead, a pre-existing fiduciary duty to the aggrieved party must also exist for a breach of contract to become conversion. *See ULQ, LLC v. Meder*, 666 S.E.2d 713, 718-19 (Ga. Ct. App. 2008). Also, in Georgia, consent to possession of the property is a valid defense to a conversion claim. *Lamb v. State Farm Mut. Auto Ins. Cos.*, 522 S.E.2d 573, 575 (Ga. Ct. App. 1999) ("[S]hould the jury find that [plaintiff] provided his consent, no action for conversion would lie as a matter of law because an essential element of that tort, unauthorized appropriation of personal property, would be absent.").

The conversion claim fails because Kapla consented to possession of the inventory when it shipped the blocks to KAPLA USA. *See* ECF No. 1 at 5. Even if KAPLA USA owed a fiduciary duty to Kapla as Plaintiffs contend, they cannot overcome the defense of consent. The Court grants Defendants' motion for summary judgment on this claim.

### 4. Breach of Fiduciary Duty by KAPLA USA

Plaintiffs claim that KAPLA USA breached a fiduciary duty to Kapla as exclusive distributor and in the debtor-creditor relationship. EFC No. 1 at 14. The Court first determines if such a duty exists as a matter of law under these relationships and then investigates whether the evidence creates an issue of material fact as to a breach.

In Georgia, when two parties enter into certain business relationships, the courts will enforce fiduciary duties between the parties. *Optimum Techs. v. Henkel Consumer Adhesives*, 496 F.3d 1231, 1249 (11th Cir. 2007).

> [I]n order for a business arrangement between two parties to rise to the level of a confidential relationship, it must be shown either that the parties have a long history with each other, or that the arrangement was not at arm's length, but was in the nature of a legal partnership or a joint venture. . . . A confidential relationship does not arise, however, where the business transaction is merely an arrangement in which each party is attempting to further [its] own separate business objectives, rather than entering into some sort of joint venture.

*Id.* (internal quotations omitted) (alterations in original). "The burden is on the plaintiff to establish that a confidential relationship existed between the parties . . . ." *Id.*

Evidence of such relationship includes a right to share profits or equal control of the putative business enterprise. *Id.*

In *Optimum*, the Eleventh Circuit held that a typical distributor relationship—"one in which [plaintiff] manufactured and supplied its product and [defendant] distributed it to retailers"—did not give rise to a fiduciary relationship. *Id.* This is exactly the relationship in this case. As evidenced by the Plaintiffs' breach of contract claim, Kapla sold blocks to KAPLA USA. *See* ECF No. 1 at 9. KAPLA USA then resold the blocks for its own benefit. The parties had no sort of profit- or control-sharing agreement.

Nor does five-year term of the distribution agreement alter the non-fiduciary nature of the parties' relationship. *See* ECF No. 55 at 10 (arguing that the extended, fixed term of this relationship distinguishes it from the business relationship in *Optimum*.) Plaintiffs have failed to produce evidence that this business relationship was anything but an arm's length transaction, so there is no fiduciary duty based solely on KAPLA USA being an exclusive distributor.

Both parties agree that "Georgia [c]ourts *may* in limited circumstances impose fiduciary obligations where a corporate [d]efendant engages in transactions at the time it is insolvent . . . ." ECF No. 51 at 22 (emphasis in original); ECF No. 55 at 10-12; *Ware v. Rankin*, 104 S.E.2d 555, 558-59 (Ga. Ct. App. 1958); *see also Tindall v. H & S Homes, LLC*, No. 5:10-CV-044, 2011 WL 5827227, at *2-3 (M.D. Ga. Nov. 18, 2011) (applying the doctrine to members of an LLC). "[O]fficers and directors may not . . . use their position for the purpose of preferring themselves over any creditor, and any scheme or device the purpose of which is to indemnify themselves against loss . . . constitutes legal fraud." *Ware*, 104 S.E.2d at 559. "The test is the intent or purpose which induced the making of the payment or the giving of the security." *Id.*

The parties here disagree as to whether Plaintiffs provide sufficient evidence to create a jury issue. Defendants contend that there is "absolutely *no* evidence" that KAPLA USA was insolvent at the time it placed the unpaid orders from Kapla, and even if it was, it treated all creditors equally, so Plaintiffs therefore did not breach fiduciary obligations. ECF No. 51 at 22 (emphasis in original). Plaintiffs point to Chayette's testimony that KAPLA USA transferred money to CITIBLOCS instead of paying Kapla because CITIBLCOS needed the money. ECF No. 55 at 11.

Defendants are wrong here for two reasons. First, Georgia law does not require that a debt be incurred at the time the defendant is insolvent to create a fiduciary duty, only that a transaction occur at the time the defendant is insolvent. *Ware*, 104 S.E.2d at 559. Here, KAPLA USA's transfer of $30,000 to CITIBLOCS at the time it owed Kapla for the unpaid orders is a sufficient transaction.[6] *See* ECF 49-3 at 16 (discussing that KAPLA USA had insufficient assets to pay off all creditors at

---

[6] Chayette testified that she may have transferred more than $30,000 from KAPLA USA to CITIBLOCS, ECF No. 49-8 at 3, so the damages for this claim are not limited to $30,000.

5

the time that it transferred money to CITIBLOCS).

Second, Chayette's testimony that she, herself was a creditor of KAPLA USA, and KAPLA USA made a choice to not pay Kapla but rather transfer funds to CITIBLOCS, thus favoring Chayette, rebuts Defendants' contention that no evidence supports a breach of fiduciary duty to Plaintiffs.[7] Plaintiffs have created a jury issue on the claim of breach of fiduciary duty by KAPLA USA as a creditor to Plaintiffs.[8]

*5. Negligent Misrepresentation by KAPLA USA as to its intention to pay Kapla for blocks purchased*

Negligent misrepresentation requires "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." *Marquis Towers, Inc. v. Highland Grp.*, 593 S.E.2d 903, 906 (Ga. Ct. App. 2004). The parties argue over the applicability of the economic loss rule to this tort, but that issue is not dispositive here. ECF No. 51 at 23-24; ECF No. 55 at 12-13.

A negligent misrepresentation "claim must be based upon misrepresentations related to pre-existing or present fact and not a promise of future conduct." *Nat'l Elite Transp., LLC v. Angel Food Ministries, Inc.*, No. 3:11-CV-41, 2011 WL 2728408, at *6 (M.D. Ga. July 12, 2011). Plaintiffs argue that for this instance of negligent misrepresentation, the false information is KAPLA USA's promise to pay for the blocks upon receipt. ECF No. 1 at 21. Thus, Plaintiffs may not predicate a claim of negligent misrepresentation on the breach of the purchase contract and this claim fails.

**D. Claims involving conduct of CITIBLOCS**

*1. Misappropriation of trade secrets*

Georgia protects trade secrets as valuable intellectual property and provides for injunctive and monetary relief when defendants have misappropriated such information. O.C.G.A. §§ 10-1-761 to 767. A trade secret is:

> information, without regard to form, including, but not limited to . . . financial data . . . or a list of actual or potential customers or suppliers which is not commonly known by or available to the public and which information:
>
> (A) Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

---

[7] Chayette became the sole member and manager of CITIBLOCS in June, 2009. ECF No. 49-8 at 3.

[8] The Court wishes to make clear that under Georgia law, GP, CITIBLOCS, and Chayette may be liable for breach of this fiduciary duty. *Ware*, 104 S.E.2d at 559. That said, "[s]uch an action does not pierce the corporate veil. Instead, it simply rescinds improper payments to shareholders or directors so that funds are available for payment of corporate debts." *Hickman v. Hyzer*, 401 S.E.2d 738, 740 (Ga. 1991). Therefore, the Court's ruling on veil piercing or successor interest liability does not apply to this claim.

6

(B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

§ 10-1-761(4); A plaintiff must present evidence of both prongs of the definition to survive summary judgment. *Bacon v. Volvo Serv. Ctr., Inc.*, 597 S.E.2d 440, 443 (Ga. Ct. App. 2004).

Defendants argue that suggested retail prices and wholesale prices are not trade secrets because they are of no value to the Plaintiffs. ECF No. 51 at 17. Defendants also argue that Plaintiffs took no steps to protect any secret information because they never demanded a confidentiality agreement, never kept any records of dissemination, and because they waited three and a half years to pursue a lawsuit to attempt to protect the secrets, likening the facts to those in *Bacon*, 597 S.E.2d at 443. *Id.* at 19.

Plaintiffs counter that the factory costs, or those that the Defendants would pay to the factory for Plaintiffs' goods, are the protected trade secret, and the testimony of a former member of CITIBLOCS supports this contention. ECF No. 55 at 5. The fact that Plaintiffs did not provide this pricing information to anybody but Chayette, they argue, is sufficient evidence of reasonable efforts to maintain secrecy, and is distinguishable from *Bacon*, 597 S.E.2d at 443, where many low-level technicians had access to the secrets. *Id.* The Court agrees. Resolution of this debate is a material question of fact for a jury, so the Court denies Defendants' motion for summary judgment as to the claim for misappropriation of trade secrets.

*2. Tortious Interference with Business Relations*

In Georgia, a plaintiff must support a claim of tortious interference with business relations with evidence that "defendant (1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) for which the plaintiff suffered some financial injury." *Amerigas Propane, L.P. v. T-Bo Propane, Inc.*, 972 F. Supp. 685, 694 (S.D. Ga. 1997).

Defendants cleverly contend that Plaintiffs only ever had one customer at a time in the United States, and at the relevant time it was KAPLA USA, so Defendant could not have interfered with itself. ECF No. 51 at 20-21. Plaintiffs counter that the relevant third parties in this case were former customers of KAPLA USA who switched to purchase CITIBLOCS's product. ECF No. 55 at 7. This is a valid argument, but a "plaintiff must present direct evidence that the relationships were likely to develop absent the interference." *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1324 (N.D. Ga. 2008). Circumstantial or, even worse, speculative evidence of future business relationships is insufficient. *Id.* at 1325.

Here, contrary to Plaintiffs' contentions about CITIBLOCS interfering with business, Tom speculated that prospective relationships were actually harmed by actions of other non-party block companies. ECF No. 51-3 at 9. Not only have Plaintiffs failed to produce direct evidence of potential

business relationships, they have actually presented evidence harming their case. The Court grants summary judgment to Defendants on the tortious interference with business relations claim.

### 3. Violation of Federal Trade Dress Protection

The Lanham Act protects the trade dress of products that inherently create a secondary meaning to consumers because of shape, color, or other non-functional characteristic. 15 U.S.C. § 1125(a); *e.g. John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir. 1983). "In order to prevail on a claim for trade dress infringement under § [1125](a), plaintiff must prove three basic things: [T]hat the trade dress of the two products is confusingly similar, that the features of the trade dress are primarily non-functional, and that the trade dress has acquired secondary meaning." *Id.* (internal quotations omitted).

The Defendants focus their argument on the non-functional requirement of the trade dress features, vehemently contending that by Plaintiffs' own admission, the allegedly infringed characteristics are functional. ECF No. 51 at 14-16. After a close reading of the complaint and deposition testimony, the Court agrees that, as described by the Plaintiffs, all allegedly infringed characteristics are functional.

Plaintiffs allege that Defendants infringed the shape, size, and dimensions of Kapla Blocks. ECF No. 1 at 18-19. T.V.D.B. admits in its deposition that "the CitiBlocs [blocks] size and shape, which is identical [to Plaintiffs' blocks], is also functional." ECF No. 51-1 at 64. Furthermore, the complaint boasts that Kapla blocks, "when stacked, remain in place through the forces or gravity, and *owing to the distinct size* and configuration of the blocks." ECF No. 1 at 3 (emphasis added). Finally, the word "dimensions" is just a sophisticated synonym for the word "size," so dimensions, too, are functional here.[9] *See* Merriam-Webster's Collegiate Dictionary 351 (11th ed. 2008).

Plaintiffs attempt to save their claim by contending that the color of the block is non-functional. ECF No. 55 at 3. This may be true, but Plaintiffs failed to allege infringement of the color of their blocks in their complaint. Because the Plaintiffs have not shown evidence of any properly-plead non-functional infringing characteristic of CITIBLOCS's blocks, the Court grants summary judgment to Defendants on the trade dress infringement claim.

### 4. Violation of the Georgia Uniform Deceptive Trade Practices Act

Both parties move for summary judgment as to the deceptive trade practices claim.

> A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he: (1) Passes off goods or services as those of another; (2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) Causes likelihood of confusion or of

---

[9] Plaintiffs also equated dimensions to ratio, ECF No. 55 at 3, but previously admitted that the ratio of the blocks is also functional, ECF No. 51-1 at 64.

8

misunderstanding as to affiliation, connection, or association with or certification by another; (4) Uses deceptive representations or designations of geographic origin in connection with goods or services; (5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have; . . . (7) Represents that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another; (8) Disparages the goods, services, or business of another by false or misleading representation of fact; (9) Advertises goods or services with intent not to sell them as advertised; . . . or (12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

O.C.G.A. § 10-1-372(a); ECF No. 49-1 at 17-18. A plaintiff "need not prove competition between the parties or actual confusion or misunderstanding" to prevail. § 10-1-372(b).

The Defendants argue that there is no evidence that they ever sought to "deceive anyone" or "otherwise engaged in any sort of . . . deceptive behavior," ECF No. 51 at 30, but this is just not true. Plaintiffs present photographs used as marketing material by CITIBLOCS that featured Kapla's blocks. ECF Nos. 49-12; 49-13; 49-14; 49-15. One of the images clearly shows that CITIBLOCS crudely removed the Kapla logo from the picture. *Compare* ECF No. 49-12, *with* ECF 49-13. CITIBLOCS also occupied a space at a toy fair originally reserved for Kapla's products which Plaintiffs contend is circumstantial evidence of an intent to deceive consumers that they were actually purchasing Kapla's blocks. ECF No. 49-1 at 20.

On the same note, however, the Court is unwilling to step into the shoes of the factfinder and conclude that these acts by CITIBLOCS caused confusion. The Court denies both motions for summary judgment as to the deceptive trade claims act and will leave the resolution of this material dispute of fact to the jury.

5. *Negligent Misrepresentation by CITIBLOCS as to the availability of Kapla's blocks in the United States*

As initially discussed above, Georgia recognizes the tort of negligent misrepresentation, and the elements are "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." *Marquis Towers, Inc. v. Highland Grp.*, 593 S.E.2d 903, 906 (Ga. Ct. App. 2004). As to this claim, Plaintiffs allege in their complaint that Defendants falsely represented *to Kapla's customers* that Kapla products were no longer available in the United States. ECF No. 1 at 21.

The Defendants argue that Plaintiffs can show no reliance on the statements because they were made to third parties, not directly

to the Plaintiffs. ECF No. 51 at 24 (citing *Potts v. UAP-GA AG CHEM, Inc.*, 567 S.E.2d 316, 319 (Ga. Ct. App. 2002)). Plaintiffs do not directly respond to this argument, but rather try to recraft their claim to Defendant's motion for summary judgment to allege that the misrepresentation was made directly to Kapla. ECF No. 55 at 13. "Upon entering into the exclusive distribution agreement, and placing orders from Plaintiffs, KAPLA USA represented that it was working exclusively for Plaintiffs, and in Plaintiffs' best interest." *Id.* Regardless of the merit of this claim, Plaintiffs did not allege this in their complaint so the Court may not consider it. Because Plaintiffs fail to show reliance on the statements made to the third-party customers, the Court grants summary judgment on this allegation of negligent misrepresentation.

### 6. Unfair Competition

"Any attempt to encroach upon the business of a trader or other person by the use of similar trademarks, names, or devices, with the intention of deceiving and misleading the public, is a fraud for which equity will grant relief." O.C.G.A. § 23-2-55. "Fraud may be consummated by signs or tricks, or through agents employed to deceive, or by any other unfair way used to cheat another." *Id.* at § 23-2-56. Georgia employs a seven-factor likelihood of confusion test for unfair competition claims. *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 935 (11th Cir. 2010). Those factors are "(1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets and customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion. Of these, the type of mark and the evidence of actual confusion are the most important." *Id.*

As with their deceptive trade practices claim, Defendants argue that there is no actionable wrong here. ECF No. 51 at 30. Plaintiffs, however, have presented evidence of a deceptive act, specifically the alteration and use of advertising material. *See* ECF Nos. 49-12; 49-13; 49-14; 49-15. That evidence creates a jury question on this matter and the Court accordingly denies summary judgment.

### E. Liability of CITIBLOCS as successor in interest to KAPLA USA

Both parties move for summary judgment as to whether CITIBLOCS is a successor in interest to KAPLA USA and, thus, liable for the contractual debt. ECF Nos. 49-1 at 14-17; 51 at 28-29. An entity "is but a continuance of the old" entity "by reason of such identity of name, objects, assets, and stockholders." *Ney-Copeland & Assocs., Inc. v. Tag Poly Bags, Inc.*, 267 S.E.2d 862, 863 (Ga. Ct. App. 1980). The identity need not be complete; only "some identity of ownership" is necessary to apply the successor-in-interest theory. *Pet Care Prof'l Ctr., Inc. v. BellSouth Adver. & Publ'g Corp.*, 464 S.E.2d 249, 251 (Ga. Ct. App. 1995) (emphasis eliminated).

Plaintiffs argue that all signs here point to a common identity between KAPLA USA and CITIBLOCS: Chayette used the KAPLA USA name to apply for a credit line for CITIBLOCS, ECF No. 49-1 at 15; the entities used the same bank accounts, *id.*;

10

Chayette is at the heart of both ventures, *id.* at 16; the employees of the companies are the same, *id.*; and the companies used the same mailing address, *id.* at 17. Defendants contend that CITIBLOCS was wholly separate from KAPLA USA with its own contractors, facilities, operations, manufacturers, and procedures, and the absence of a transfer of stock precludes successor liability. ECF No. 51 at 29 (citing *Bakers Carpet Gallery v. Mohawk Indus.*, 942 F.Supp. 1464, 1471 n.7 (N.D. Ga. 1996)).

Nearly all signs point to CITIBLOCS as being a continuation of and successor in interest to KAPLA USA. Chayette is indeed at the heart of both ventures. ECF No. 49-3 at 3. Although she did not become a CITIBLOCS member until June, 2009, Chayette held herself out as one in a credit application for CITIBLOCS in May, 2009. ECF No. 49-19 at 2. Chayette also claimed CITIBLOCS owned 51% of KAPLA USA and attached its financial statements to CITIBLOCS's credit application. *Id* at 2, 9-16.

KAPLA USA and CITIBLOCS had at least some of the same employees, and some even worked for both companies simultaneously. *Compare* ECF No. 49-3 at 3, *with* ECF No. 49-8 at 9. Mike Lauter, the founding member of CITIBLOCS sold KAPLA USA inventory and then received payment from CITIBLOCS for his efforts. ECF No. 49-8 at 9. CITIBLOCS occupied a space at a toy fair reserved for and designated as KAPLA USA. *Id.* at 11. KAPLA USA transferred at least $30,000 of assets (cash) to CITIBLOCS to fund its start-up. *Id.* at 3. The identity is more than sufficient as described in *Pet Care Professional Center*, 464 S.E.2d at 251—the similarity of the names being the only incompleteness. CITIBLOCS will be liable for KAPLA USA's contractual debts.

### F. Liability of Chayette by veil piercing

Defendants move for summary judgment to protect Chayette from veil piercing through any of the other Defendants. ECF No. 51 at 26-28. In order to pierce the veil of a limited liability company, "there must be evidence that [an individual defendant] abused the forms by which the LLC was maintained as a separate legal entity apart from his personal business." *Bonner v. Brunson*, 585 S.E.2d 917, 918 (Ga. Ct. App. 2003).

Plaintiffs make a compelling case that Chayette comingled the KAPLA USA and CITIBLOCS entities, ECF No. 55 at 16-18, but this alone is insufficient to justify piercing the corporate veil. *Insituform Techs., LLC v. Cosmic TopHat, LLC*, ___ F. Supp. 2d ___, No. 1:08-CV-333-TCB, 2013 WL 4038722, at *8 (N.D. Ga. Aug. 9, 2013). As the Defendants argue, KAPLA USA and CITIBLOCS were validly organized, maintained the corporate formalities such as a registered agent, maintained bank accounts separate from Chayette, and borrowed money in the corporate name. ECF No. 51 at 27. Although Chayette prematurely identified herself as a member of CITIBLOCS on the credit application discussed above, the "failure of a limited liability company to observe formalities relating to the exercise of its powers or the management of its

business and affairs is not a ground for imposing personal liability on a member." O.C.G.A. § 14-11-314. In light of Georgia case law and statute,[10] Plaintiffs have failed to present sufficient evidence to justify piercing the corporate veil to reach Chayette, and the Court grants summary judgment in favor of Defendants on this matter.[11]

### III. CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** both motions for summary judgment. The Court grants summary judgment in favor of (1) the Plaintiffs as to the breach of contract claim and concludes that CITIBLOCS is a successor in interest to KAPLA USA; and (2) Defendants as to the unjust enrichment, conversion of inventory, negligent misrepresentation, tortious interference with business relations, and federal trade dress infringement claims and concludes that Plaintiffs may not pierce the veil to reach Chayette.

The Court denies summary judgment and leaves for the jury Plaintiffs' claims of breach of fiduciary duty, misappropriation of trade secrets, violation of the Georgia Uniform Deceptive Trade Practices Act, and unfair competition.

Finally, the Court **ORDERS** the parties to 1) submit briefs on the proper conversion rate from Euros to Dollars and the proper pre-judgment interest rate and 2) submit a proposed joint pretrial order, all within 21 days of this order.

This 16 day of December 2013.

_____
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[10] This issue rests with the State, and the Court will respect Georgia's statutes and case law in its decision. Given a clean slate, the Court would strongly consider piercing the corporate veil.

[11] This ruling does not completely absolve Chayette of liability for two reasons: first, as stated above, Chayette may be liable for breach of fiduciary duty, *see supra* note 8, and second, "a corporate officer who takes part in the commission of a tort committed by the corporation is personally liable therefor." *Almond v. McCranie*, 643 S.E.2d 535, 537 (Ga. Ct. App. 2007).